IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARISHA PATTERSON, for J.P., a Minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:13CV575 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Marisha Patterson, brought this action on behalf of her minor child, J.P., pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Child Supplemental Security Income ("SSI") payments under Title XVI of the Act. (Docket Entry 2.) The Court has before it the certified administrative record and the parties have filed cross-motions for judgment (Docket Entries 10, 12). For the reasons that follow, the Court should enter judgment for Defendant.

### I. PROCEDURAL HISTORY

Plaintiff applied for SSI on behalf of her child J.P. (Tr. 164-73, 175-83.) Following denial of the application initially (Tr. 96, 106-15) and on reconsideration (Tr. 97-105, 129-33), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 134). Plaintiff, J.P., their attorney, and

J.P.'s mental health case manager attended the hearing. (Tr. 41-95.) The ALJ thereafter ruled J.P. not disabled under the Act (Tr. 19-36) and the Appeals Council denied Plaintiff's request for review (Tr. 1-6), thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In rendering this disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [J.P.] . . . was a preschooler on . . . the date the application was filed, and is currently a school-age child.
>
> 2. [J.P.] has not engaged in substantial gainful activity since . . . the application date.
>
> 3. [J.P.] has the following severe impairments: attention deficit hyperactivity disorder (ADHD), oppositional defiant disorder.
>
> . . .
>
> 4. [J.P.] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. [J.P.] does not have an impairment or combination of impairments that functionally equals the listings.

(Tr. 25 (internal citations omitted).)

The ALJ therefore determined that J.P. did not have a "disability," as defined in the Act. (Tr. 36.)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope

of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). In this case, Plaintiff has not shown entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal

brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and a child under the age of 18 qualifies as disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitation, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," 20 C.F.R. § 416.906. In resolving such a claim, the ALJ must follow a three-step sequential evaluation process to consider whether a claimant (1) has engaged in substantial gainful activity; (2) has a severe impairment; and (3) has an impairment that meets or either medically or functionally equals a listed impairment. 20 C.F.R. § 416.924.

## B. Assignment of Error

Plaintiff's assignment of error seeks reversal of the ALJ's disability determination on the ground that the ALJ reached conclusions unsupported by substantial evidence in connection with the "domain analysis" (i.e., the evaluation of whether J.P. had impairments that, although insufficient to meet a listing, functionally equaled a listing, see 20 C.F.R. § 416.926a(a)). (See Docket Entry 11 at 2-4.) A child's impairments functionally equal a listing if the child has "'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a).[1] In this context, the regulations identify these six domains of functioning: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for [one]self; and (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1).

Here, the ALJ found that J.P. had a "marked" limitation in Interacting and Relating with Others, a "less than marked" limitation in Attending and Completing Tasks, and no limitation in Acquiring and Using Information, Moving About and Manipulating Objects, Caring for Self, and Health and Physical Well-Being. (See Tr. 30-35.) Plaintiff contends that the ALJ reversibly erred by

---

[1] A "marked" limitation "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i) (emphasis added). An "extreme" limitation "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities," but "does not necessarily mean a total lack or loss of ability to function." 20 C.F.R. § 416.926a(e)(2)(i) (emphasis added).

failing to find a "marked" limitation in the domain of Attending and Completing Tasks and an "extreme" limitation in the domain of "Interacting and Relating to Others." (Docket Entry 11 at 2-4.) A careful review of the record confirms that substantial evidence supports the ALJ's decision with respect to these matters.

**1. Attending and Completing Tasks**

The ALJ began his evaluation of this domain by reciting relevant portions of the regulatory criteria for Attending and Completing Tasks:

> This domain considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the mental pace at which he performs activities and the ease of changing activities. Attending and completing tasks also refers to a child's ability to avoid impulsive thinking and his ability to prioritize competing tasks and manage his time.
>
> . . .
>
> Some examples of difficulty children could have in attending and completing tasks are: (i) is easily startled, distracted, or over-reactive to sounds, sights, movements, or touch; (ii) is slow to focus on, or fails to complete, activities of interest (e.g., games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; (v) requires extra supervision to remain engaged in an activity; or (vi) cannot plan, manage time, or organize self in order to complete assignments or chores.

(Tr. 31-32 (citing 20 C.F.R. § 416.926(h).)

The ALJ then provided his rationale for finding a "less than marked" limitation in the domain at issue:

> The records show that [J.P.'s] ADHD and ODD make it difficult to focus and complete tasks when not medicated. [J.P.'s first grade teacher] Ms. Royal advised that

-6-

> [J.P.] had a serious problem working without distracting others in the [first] grade. Ms. Royal advised that [J.P.] was unable to pay attention or complete work when not medicated. However, this functional domain is not markedly limited because the majority of the objective evidence indicates that [J.P.'s] behavior and scholastic functioning improved with medication. It was also noted that he enjoyed playing video games, which indicates an ability to attend and complete tasks. [J.P.] continues to have some difficulty attending and completing tasks when taking his medications, as evidenced by his consultative examination with Dr. [Robin H.] Exum-Calhoun. Yet, he has been able to complete tasks sufficiently enough without an [individualized education program ("IEP")] to be promoted to the [fourth] grade.

(Tr. 32.)

Plaintiff does not challenge the accuracy of the ALJ's above-quoted analysis. (See Docket Entry 11 at 2-4.) Rather, Plaintiff faults the ALJ for "erroneously ignor[ing]" the "marked" limitation in Attending and Completing Tasks assessed by state agency consultant Richard H. Cyr-McMillon, Ph.D. at the reconsideration stage, and "the detailed and experienced testimony" of case manager Bryan Thomas regarding J.P.'s limitations. (Id. at 2 (citing Tr. 100); see also Tr. 69-72.) Plaintiff additionally asserts that the ALJ overemphasized the degree to which medication controlled J.P.'s inattentiveness and hyperactivity, citing Roelandt ex rel. Roelandt v. Apfel, 125 F. Supp. 2d 1138 (S.D. Iowa 2001). (Docket Entry 11 at 3-4.) Plaintiff's contentions warrant no relief.

Contrary to Plaintiff's assertion (see Docket Entry 11 at 2), the ALJ did expressly consider the opinion of state agency consultant Dr. Cyr-McMillon that Plaintiff had "marked" limitation in Attending and Completing Tasks (see Tr. 29). The ALJ "assign[ed] some weight" to Dr. Cyr-McMillon's opinions as "well

supported by the objective evidence of record which shows that [J.P.] requires case management services but has excelled in school and improved his behavior with medication." (Id.) However, the ALJ then explained that he "found that [J.P.'s] ability to attend to and complete tasks was not as severe as Dr. Cyr-McMillon found because [J.P.] has been able to be promoted to the next grade in school with excellent grades and without an IEP." (Id.) Thus, the ALJ expressly discussed Dr. Cyr-McMillon's "marked" limitation regarding J.P.'s ability to attend to and complete tasks, and provided sufficient reasons for rejecting that opinion. As the ALJ expressly discussed Dr. Cyr-McMillon's "marked" limitation in Attending and Completing Tasks as part of the ALJ's overall analysis of the opinion evidence of record, no need existed for the ALJ to rehash that discussion in his specific evaluation of the Attending and Completing Tasks domain. See McCartney v. Apfel, 28 F. App'x 277, 279-80 (4th Cir. 2002) (rejecting challenge to ALJ's finding for lack of sufficient detail where other discussion in decision adequately supported finding and stating "that the ALJ need only review medical evidence once in his decision"); Kiernan v. Astrue, No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that, where an "ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion" in other parts of his analysis).[2]

---

[2] Moreover, the state agency consultant at the initial stage found "less
(continued...)

Similarly, the ALJ also discussed case manager Bryan Thomas' testimony at the hearing at some length, including Mr. Thomas' opinions regarding J.P.'s ability to attend to and complete tasks:

> [J.P.'s] case manager, Bryan Thomas, testified that he had been coordinating [J.P.'s] treatment since [J.P.] was three years old. He sees [J.P.] once or twice per week and has family team meetings once per month and meets with [J.P.'s] educational providers. Mr. Thomas advised that [J.P.] had been suspended several times this school year for behavioral problems. Yet, Mr. Thomas noted that [J.P.] is fairly compliant with the rules within the classroom. [J.P.'s] behavior negatively affected his schoolwork in the past but his schoolwork improved this past year. He no longer requires an [IEP]. Mr. Thomas advised that [J.P.'s] behavior outside of the classroom is disruptive and he was suspended from the bus. Prior to the current year, [J.P.] expressed a lot of defiance towards authority figures and inappropriate temper control. [J.P.] can sustain attention moderately well but it depends on the day. He has improved with focusing on tasks but he still gets off task. [Mr. Thomas] estimated that [J.P.] had only mild to moderate problems in activities that involve attending and completing tasks, except that he noted a possible serious problem [with J.P.] working at a reasonable pace. [J.P.] does not go to summer camp because he was not taking medications when out of school.

(Tr. 26-27 (emphasis added).) The ALJ's above-quoted summary harmonizes with Mr. Thomas' testimony (compare id., with Tr. 69-72), and Plaintiff did not point to any opinions offered by Mr. Thomas that would compel a finding of "marked" limitation in Attending and Completing Tasks (see Docket Entry 11 at 2-4).

---

²(...continued)
than marked" limitation in this domain. (Tr. 108.) Such opinion evidence supports the ALJ's finding. See, e.g., Williams ex rel. R.M. v. Astrue, No. 1:11CV2135, 2012 WL 3283427, at *8 (N.D. Ohio Aug. 10, 2012) (unpublished) (describing state agency psychologist's "opinion that the claimant was less than markedly limited in attending and completing tasks . . . [a]s medical expert opinion evidence upon which the ALJ was permitted to rely").

Finally, Roelandt does not assist Plaintiff in her argument that the ALJ in this case placed too much emphasis on the beneficial effects of J.P.'s medication. In that case, the court reversed the Commissioner and awarded SSI benefits to a child, in part, because the court disagreed with the ALJ's conclusion that the child's "medication [was] effective in controlling his behavior," noting that "when the record is read in its entirety it becomes clear that the medication is not effective on a consistent basis." Roelandt, 125 F. Supp. 2d at 1148. The court additionally noted that "some of the child's behavior problems may be due to a seizure disorder" [and,] [i]f that is true, perhaps different medication will be effective in controlling [the child's] problems." Id.

In contrast, here, the evidence of record shows a significant degree of consensus between J.P.'s mother, J.P.'s first grade teacher, a consultative examiner, and case manager Bryan Thomas that medication does help to control J.P.'s ADHD and ODD symptoms. (See Tr. 79 (testimony of J.P.'s mother that she noticed "big difference" in J.P.'s behavior when he did not take medication), 80 (testimony of mother that J.P. remains "quiet," "controllable," and "settled" when on medication), 225 (first grade teacher's opinion that J.P.'s medication renders him calm and focused, decreases erratic movements, and results in him speaking less and more softly), 415 (opinion of consultative examiner Dr. Exum-Calhoun that J.P. can perform simple, routine, repetitive tasks when on medication), 73 (testimony of Mr. Thomas that J.P.'s behaviors

-10-

become "unmanageable" when not on medication during summers).) Moreover, the record here lacks any evidence, unlike Roelandt, that J.P. suffers from an untreated condition that may contribute to his symptoms. The ALJ thus did not err in his consideration of the effect of J.P.'s medication on his symptoms.

Under these circumstances, substantial evidence supports the ALJ's finding that J.P. suffers "less than marked" limitation in the functional equivalence domain of Attending and Completing Tasks.

**2. Interacting and Relating to Others**

Plaintiff additionally challenges the ALJ's finding of a "marked" limitation in the domain of Interacting and Relating to Others, and argues that the ALJ should have found an "extreme" limitation. (Docket Entry 11 at 2-3.) In support of that challenge, Plaintiff maintains that case manager Mr. Thomas' testimony demonstrates that J.P. had "serious problems" both "at school and at home," and thus supports a finding of "extreme" limitation. (Id. at 3.) Plaintiff's arguments do not warrant relief.

As an initial matter, Plaintiff conflates the regulatory definitions of "marked" and "extreme." According to the applicable regulation, "serious problems" interacting and relating to others "at school and at home" (id. at 3), would translate to a "marked" limitation in that domain, 20 C.F.R. § 416.926a(e)(2)(i) ("marked" limitation "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities" (emphasis

-11-

added)), which constitutes the actual level of limitation the ALJ found (see Tr. 33). In contrast, an "extreme" limitation "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i) (emphasis added). In addition, Plaintiff does not cite or discuss which parts of Mr. Thomas' testimony purportedly support an "extreme" limitation in the domain at issue. (See Docket Entry 11 at 2-3.) Moreover, neither of the state agency consultants found "extreme" limitation in this domain. (Tr. 100, 108.) The record thus does not compel a finding that J.P. suffered an "extreme" limitation in Interacting and Relating to Others. See, e.g., Adams v. Barnhart, Civ. No. 05-134-B-W, 2005 WL 3832408, at *3 n.4 (D. Me. Mar. 6, 2005) (unpublished) ("[T]wo state-agency psychologists found no limitation or less than marked limitations in these domains . . . . The [ALJ] was entitled to rely on the medical evidence provided by the state-agency psychologists." (internal citations omitted)).

In sum, Plaintiff's challenge to the ALJ's "marked" finding in Interacting and Relating to Others lacks merit.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) be denied, that

Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that this action be dismissed with prejudice.

                                                                      /s/ L. Patrick Auld
                                                                           **L. Patrick Auld**
                                        **United States Magistrate Judge**

November 30, 2015